Peck, «T.
The agreed case concedes that Stephen B. Com-stock, since deceased, at the execution of his deed to Raymond and Wade, on May 30, 1836, had a perfect title, at law and in equity, to the' part of river tract No. 5 which he thereby conveyed to them. His deed then transferred to them a valid title- as against every person at the time of its execution, and had they complied with the registry act (Swan’s Stat. of 1854 p. 310, sec. 8), by causing the same to be recorded within six months thereafter, their title would have continued unimpaired until now; so that Daniels would have taken nothing by the conveyances of the sheriff in 1845, or the quitclaim of Comstock in 1846; and the breach of covenant, if any, has its origin in one or all of these conveyances, some nine or ten years subsequently to the conveyance to the plaintiff.
*79 The question thereupon arises, whether an action can b8 maintained upon a covenant of general warranty in a deed, for a subsequent failure of title, where the grantor had, at the date of the deed, a perfect legal and equitable title to the thing granted.
Counsel upon both sides have exhibited commendable industry and skill in collecting and collating a large number of authorities upon this point, from the time of Lord Coke to the present, and with the exception presently to be noted,, they all establish and confirm the position, that the covenant of general warranty relates solely to the title as it was at the time the conveyance was made, and merely binds the grantor to protect the grantee and his assigns against a lawful and better title, existing before or at the date of the grant. Coke Litt. Lib. 3, ch. 13, sec. 741, p. 388b; Bac. Ab. Tit. Warranty P; Greenliff’s ex'r v. W. —, Dyer 42a; Wotton v. Hale, 3 Saund. 177, 180, note 10; Marston v. Hobbs, 2 Mass. 438; Ellis v. Welch et al. 6 Ib. 250; Stearns v. Hendersass, 9 Cush. 502; Kelly v. Dutch Church, 2 Hill, 111; Grannis v. Clark, 8 Cow. 42; Folliard v. Wallace, 2 Johns. 402; Rawle on Cov., Tit. 200. Nor is this rule less applicable to the modern, than to the ancient covenant of warranty. The form of the writ and the nature of recompense, in value, have been changed; but the measure of its obligation is still the same. Stewart v. West, 14 Penn. Rep. (2 Harris) 338.
The counsel for the plaintiff has, however, referred us to two cases, Curtis v. Deering, 12 Maine, 501, and Staples v. Flint, 28 Verm. 794, as establishing a different rule, or, rather, as creating an exception to it, where the subsequent, but prevailing, title is created by the act of the. covenantor. The case of Staples v. Flint does not, however, conflict with the rule we have deduced from the authorities. In that case, F. and L. had leased a piece of land to S. by a writing, not acknowledged as the statute required, for a bowling alley, and subsequently, while in the possession of S., sold and conveyed the land to a third person without reservation as to S. Whereupon S. brought assumpsit on the agreement, to recover damages, and it was held that S. could recover, and need not *80 resort to equity to compel a lease from the purchaser. The case of Curtis v. Deering is, however, in apparent conflict with the rule. D. executed a deed of mortgage with covenant of general warranty to C., March 8, 1880, which C. neglected to have recorded. D., in September, 1832, conveyed the land in fee simple to J. D., Jr., which deed was recorded in March following. In October, 1853, J. D., Jr., conveyed the same in fee to H. and Y., who had no knowledge of the unrecorded mortgage to C. Thereupon, C. sued D. upon his covenant of warranty, relying for breach upon the subsequent conveyance to H. and Y. Assuming that the title to the land in the case at bar did not pass by the sheriff’s, deed to Daniels, but that the quitclaim, with special warranty of Comstock, operated to transfer it, the two cases are nearly parallel. The counsel in the Ourtis and Deering case made the same objection to a recovery, and cited some of the authorities above referred to; but the court, Weston, C.J., acknowledging the general rule, says that “ there is no propriety in applying the rule that there should be proof of elder title, to evictions founded upon the subsequent acts of the covenantor which can not be resisted; ” but finally arrives at the conclusion that, under the registry laws of Maine, the last deed is to be regarded in law as the elder title.
No authority is cited nor reason given for this exception, unless it be an allusion made to Croke James, in which a rea son is assigned for the rule itself, “ that otherwise the prevailing title may have been derived from the covenantee himself,” and leaving us to apply the maxim eessante ratione, etc. But the reason assigned in Croke James, does not satisfy the unbending rule in Coke upon Littleton, that “ a warrantie doth extend to rights precedent and never to any right that commenceth after the warrantie,” and the other authorities above cited, limiting the covenant to title and rights existing at the date of the covenant, and excluding titles and rights subsequently acquired. It lies much deeper, and is to be found, not in the source of the evicting title, but in the nature of the covenant itself and the intention of the parties, to be collected from all the covenants set forth. It is a stipulation on *81 the part of the warrantor, that the title thereby granted waa then unexceptionable, and that in all time to come he would maintain it to have been unexceptionable at that time. The covenants are that he is seized, has good right to sell, that they are free from incumbrances, and that he will warrant and forever defend, etc. It must be presumed from the general words thus employed, that the parties had in view evictions, etc., to be made by existing rights and not by rights afterward to be acquired. These views will be found fully sustained by the authorities before cited. It is not a question whether the grantee has any remedy in such a case, which we áre far from denying, but whether that remedy is to be sought in an action, for breach of covenant.
As between the parties, the failure to record the deed, did not divest the title of the grantee, nor authorize the grantor to treat the land as still belonging to him. As between them, it was still the property and estate of the grantee; and if the grantor, under such circumstances, should convey it to a third person, by a deed effective to transfer the title, as was done in the case of Curtis v. Deering, and as is claimed in the present case by the plaintiff, but denied by the defendant, such act of the grantor was a wrong for which he would, doubtless, be liable to the grantee; but if our view of the obligation imposed by the covenants is correct, he would not be liable upon the covenant of warranty, for the deed conveyed a good title at the time it was made, and there could, therefore, be no breach of 'that covenant. Stearns v. Hendersass, 9 Cush. 502.
The decision in Curtis v. Deering, seems to have been made without duly considering the nature and extent of the covenant of general warranty, as it had been adjudged from the time of Littleton. The judge (Watson) remarks, that the failure to record the first deed made the one subsequently recorded, by construction of law, the elder title. This .might, in one sense, be true in that State, as by the statutes of Maine (Revised Statutes of Maine, of 1857, 450, sec. 8)-, a deed is not effectual against any person, other than the grantor or his heirs, without notice, until it is recorded. As against, the junior grantee, the unrecorded mortgage never, had,any effect,;. *82 never was the better title. But under our statute, the unrecorded deed was effectual as against all the world, to hold and transfer the title for six months after its execution, and the subsequent deed, though the better title, owing to the failure to record the first, can not, with any propriety, be termed the elder title.
To allow a recovery in the present case, would unsettle a rule of the common law which has prevailed for centuries. If the rule ought to be changed, it should be done by legislation, which operates prospectively, and not by judicial decision, which also operates retrospectively. If there was no other remedy, it might, perhaps, be excusable to create the exception. But no one can doubt, but that the grantor, if by his agency the title was subsequently defeated, would be liable to the grantee for the damages thereby occasioned. It would be a wrongful act in fraud of the rights of the grantee. 3 Ohio, 222.
The settled rule of damages for breach of the covenant of warranty, is the purchase money with interest thereon, from the time of eviction — a rule adopted on principles of public policy, but which will scarcely ever do exact justice to both parties, being either more or less than a fair compensation. This rule, applied to the present case, would work manifest injustice. As appears by the averments of the petition, the plaintiff, in 1836, paid for the land subsequently sold, the sum of $7,500. The sale by the sheriff, in 1845, was for the sum •of $216, so that the value at that time could not have exceeded $324. A recovery upon the covenant of warranty, ■then, would be $7,500, and interest thereon from 1845, when the land, at the time his title was interfered with, was worth only $324, or a recovery.at that rate, for the proportion now in suit. And there would be no escape from this result, unless we should change the settled rule of damages, as well as the settled construction of the covenant. While by leaving the grantee to his action for the wrongful interference of the grantor, if any, the damages may, without violence to settled rules, be made to approximate closely the benefit received or -the injury inflicted.
*83 We are, therefore, clearly of the opinion, for the reasons already stated, that no action can be maintained upon the covenant of general warranty in the deed from Comstock to the plaintiff.
We have been referred to several adjudged cases to the effect, that a claim of title by the covenantor, or any act done by him asserting a title after grant made, though tortious, is a breach of the covenant of warranty. We have examined all the cases referred to, and none of them sustain the position. They are all cases arising upon covenants for quiet enjoyment in the usual form, and the acts done were within the very terms of the covenant; and in the last case cited (7 Johns, 376, 380), this manifest distinction is recognized, and the acts complained of held to be a breach of the covenant of quiet enjoyment, but not of the warranty contained in the same deed. See also to the same effect, Rawle on Covenants, 189; Stewart v. West, 14 Penn. Rep. (2 Harris), 338.
The result to which we have arrived, fenders it unnecessary for us to examine the other points mooted by counsel, as to the relative effect of the several sheriff’s deeds, and the conveyance of S. B. Gomstock, upon the title and rights of the plaintiff. Should an action be hereafter instituted to recover damages for a wrongful and fraudulent interference with the title and rights of the plaintiff in the execution of that deed, the effect of these several conveyances upon the title and rights of the plaintiff will have to be considered, and. we, therefore, abstain from expressing any opinion in regard to them at this time.

Judgment for defendant.

Brinkerhoff, C.J., and Scott, Sutliff, and Gholson, JJ., concurred.